UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

RHONDA LEE MOUSE, )
 )
      PLAINTIFF, )
 )
vs. ) CASE NO. 14-CV-287-FHM
 )
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security )
Administration, )
 )
      DEFENDANT. )

## OPINION AND ORDER

Plaintiff, RHONDA LEE MOUSE, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Plaintiff's application for benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held December 17, 2012. By decision dated March 18, 2013, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on April 2, 2014. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 50 years old on the alleged date of onset of disability and 54 years old on the date of the ALJ's denial decision. [R. 23-30]. She has a 10th grade education and past work experience includes poultry line worker. [R. 28]. Plaintiff claims to have been unable to work since February 9, 2009 due to problems with her heart, knees, arthritis, and carpal tunnel syndrome in her hands. [R.185].

## The ALJ's Decision

The ALJ determined that Plaintiff has severe impairments relating to generalized osteoarthritis, mild degenerative joint disease of the knees, history of carpal tunnel syndrome, and obesity. Further, the ALJ found that Plaintiff's history of alcohol abuse and methamphetamine abuse were "non-severe." [R. 26]. The ALJ determined that Plaintiff

2

has the residual functional capacity (RFC) to perform light[2] work with normal breaks. Plaintiff is limited to work which requires no more than frequent handling, fingering, and feeling with the hands. [R. 26]. Although Plaintiff is unable to perform her past relevant work and her ability to perform work at all exertional levels is limited, the ALJ determined, based upon the testimony of the vocational expert, that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 30-31]. Accordingly, the ALJ found Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## **Plaintiff's Allegations**

Plaintiff asserts that the ALJ failed to make a proper residual functional capacity determination.

---

[2] Pursuant to CFR § 404.1567, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

## Analysis

Plaintiff argues that the ALJ erred when he found she was capable of performing light work as opposed to sedentary work. [Dkt. 22, p. 6]. According to Plaintiff, if the ALJ had properly considered all of her impairments, the Medical Vocational Guidelines (Grids)[3] would have directed a finding of disability under Rule 201.09. Under Grid Rule 201.09, a person who is over 50 years old, with limited education, unskilled past work, who is unable to perform past relevant work, is disabled.

Plaintiff contends that the evidence clearly supports a finding that she can stand or walk only "occasionally," which would limit her functioning to the "sedentary"[4] category. [Dkt. 22, p. 7]. Plaintiff points to two records which, in her view, constitute substantial evidence requiring a finding that she is limited to sedentary work. The first record dated September 23, 2011 is from a nurse practitioner who examined Plaintiff on one occasion. The nurse practitioner found Plaintiff's knees had crepitus with movement, an antalgic gait, and had difficulty getting onto the examination table. Plaintiff was prescribed over-the-counter pain medication. [R. 270-272]. The second record is the x-rays of her knees taken on February 7, 2013 which revealed small lateral femoral and tibial condyle spurs in the left

---

[3] The Grids are matrices of four factors–physical ability, age, education, and work experience. The Grids set forth rules that identify whether jobs requiring specific combinations of those factors exist in significant numbers in the national economy. *Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998)(quoting *Heckler v. Campbell,* 461 U.S. 458, 461-62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). When all factors coincide with the criteria of a Grid Rule, then the ALJ can rely on the Rule to establish the existence of jobs at step five of the evaluative sequence. 20 C.F.R. P. 404, Subpt. P.App. 2, 200(b).

[4] Pursuant to CFR § 404.1567 sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

knee. The right knee had spurs only in the lateral femoral condyle. Medial compartment narrowing was noted in both knees. The remaining structures were within normal limits. [R. 372].

In formulating the RFC, the ALJ relied on the findings of consultative examiner, Dr. Mohammed Quadeer, M.D., who examined Plaintiff in June 2011. Plaintiff reported she had elevated blood pressure, learning disability, history of depression, anxiety, and audio-visual hallucinations. Plaintiff did not take medication for her depression. Dr. Quadeer's notes indicate that Plaintiff worked approximately ten hours per month in order to receive food stamps. His examination revealed no edema of the hands, knees, or pretibial areas; grip strength was 5/5 bilaterally strong and firm. Her knees show no effusion and were stable in all range of motion exercises. Her gait is safe and stable with appropriate speed, and there is no identifiable muscle atrophy. Dr. Quadeer found that Plaintiff maintained the ability to perform gross and fine manipulation with her hands. [R. 274-283]. The ALJ discussed Dr. Quadeer's findings including the probability that Plaintiff had arthritis in her knees and small joints of her hands. [R. 27].

The ALJ also relied upon the findings of State Disability Determination Services (DDS) medical consultant, Dr. Luthur Woodcock, M.D., who prepared a *Physical Residual Functional Capacity Assessment* on July 19, 2011. Dr. Woodcock recounted the medical records which showed Plaintiff did not have any manipulative or postural limitations, her gait was stable with appropriate speed; she did not use assistive devices; and her activities of daily living included cooking, cleaning her house, driving, and shopping. Dr. Woodstock opined Plaintiff was capable of performing light work. [R. 284-291].

5

The court finds that Grid Rule 201.09 is not applicable because the ALJ's determination that Plaintiff is capable of performing light work is supported by substantial evidence.

Plaintiff argues that the ALJ failed to provide a narrative discussion regarding the RFC assessment. According to *SSR* 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC statement must always consider and address medical source opinions. If the RFC assessment is in conflict with a medical source opinion, the ALJ must explain why the opinion was not adopted. *SSR* 96-8p, 1996 WL 374184 at *7.

Prior to making the RFC finding, the ALJ reviewed medical evidence and made several references to treating and/or examining physicians. The ALJ discussed the medical records including the June 2009 progress notes from Grand Lake Medical Park Langley in which Plaintiff was stable, doing well, and without complaints. [R. 27, 250]. The September 2011 progress note indicates Plaintiff complained of a weak grip, the need to use both hands to lift 5 pounds, antalgic gait, and crepitus. [R. 270]. The ALJ also noted the records from a few months earlier in June 2011, where Plaintiff appeared for a consultative examination with Dr. Mohammed Quadeer, M.D., who found Plaintiff's knees showed no effusion or edema, and were stable in all range of motion exercises, and grip strength was normal. [R. 27-28, 274-276]. The ALJ also discussed the x-rays of Plaintiff's knees taken in February 2013 which showed small lateral femoral and tibial condyle spurs in the left knee, spurs only in the lateral femoral condyle of her right knee, and medial compartment

narrowing in both knees. Otherwise, the x-rays were negative. [R. 28, 372].  The ALJ also noted Plaintiff indicated that she was capable of cleaning her house, cleaning her church, driving a vehicle, and shopping for groceries, which activities conflict with her alleged functional limitations. [R. 28, 177-80, 270, 274, ].  The ALJ provided an adequate rationale for his RFC assessment, which is also supported by substantial evidence.  The court finds that the ALJ's narrative discussion is sufficient to support the residual functional capacity determination.

Plaintiff contends that because the ALJ found "mild degenerate joint disease of the knees" at step two, that functional limitations as to her knees should have been included in the RFC. [Dkt. 22, p. 8].  The step two severity finding and the RFC finding involve different considerations. To find a "severe" impairment at step two requires only a threshold showing that the claimant's impairment has "more than a minimal effect on [her] ability to do basic work activities." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988).  A step two determination that Plaintiff's generalized osteoarthritis, mild degenerative joint disease of the knees, history of carpal tunnel syndrome, and obesity are "severe" only allows the sequential process to proceed.  It does not address the degree of work-related functional limitations resulting from the "severe" impairments.  An ALJ does not err by failing to match each step two impairment to a work-related limitation in the RFC.  Rather, in developing the RFC the ALJ considers all of the medical and other evidence to determine whether the record supports the existence of physical, mental, sensory, and other limitations in the ability to perform work-related functions.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The question then is not whether the RFC contains the "severe" impairments found at step two, but whether the RFC accounts for the work-related limitations that flow from

7

those impairments. Accordingly, the ALJ's failure to incorporate each severe impairment found at step two into the RFC finding is not error. The court finds that the ALJ's conclusion that Plaintiff is limited to the performance of light work is supported by substantial evidence. Furthermore, even if the evidence would arguably support a view different from the one taken by the ALJ, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation marks and brackets omitted).

## **Conclusion**

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 21st day of September, 2015.

*Frank H. McCarthy*
_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE